IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| In re:<br><br>MICHAEL DYLAN HENSHAW and KIMBERLY HENSHAW,<br><br>    Debtors.<br>_____<br><br>PHILIP DANIEL HENSHAW and BARBARA WRESSELL HENSHAW,<br><br>    Appellants,<br><br>    v.<br><br>DANE S. FIELD, Trustee of the Bankruptcy Estate of MICHAEL DYLAN HENSHAW and KIMBERLY HENSHAW,<br><br>    Appellee. | CV NO. 17-00329 DKW-RLP<br>CV NO. 17-00341 DKW-RLP<br>(Consolidated Cases)<br><br>Bankr. Case No. 11-00853<br>Adv. Pro. No. 12-90070<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S JUNE 2017 ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT** |

## <u>INTRODUCTION</u>

Appellants Philip Daniel Henshaw and Barbara Wressell Henshaw (the

"Henshaws")[1] appeal the June 28, 2017 Final Judgment entered in Adversary

_____

[1] Appellants Philip Daniel Henshaw and Barbara Wressell Henshaw are the parents of debtor Michael Dylan Henshaw.   For clarity, the Court refers to Michael Dylan Henshaw and Kimberly Henshaw, collectively, as "Debtors" throughout.

Proceeding No. 12-90070, which rendered a final decision on the merits in accordance with the bankruptcy court's June 20, 2017 summary judgment determination in favor of Trustee Dane S. Field ("Trustee"). The bankruptcy court determined that (1) the Trustee was a bona fide purchaser for value who may be entitled to sell both Debtors and the Henshaws' 50% ownership interests in the subject real property held as joint tenants, pursuant to 11 U.S.C. § 363(b) and (h), and (2) the Trustee was entitled to summary judgment on the Henshaws' Counterclaim for reformation, which sought to reform the deed to the property to reflect the Debtors and Henshaws' intended ownership interests. The Henshaws appeal these rulings.

Although the bankruptcy court granted his motion for summary judgment in the Adversary Proceeding below, the Trustee cross-appeals the court's conclusion that the Counterclaim did not amount to an impermissible collateral attack on a prior judgment entered in another adversary proceeding between these same parties. Because the Court AFFIRMS the decision of the bankruptcy court that the Trustee was a bona fide purchaser without notice of the Henshaws 2007 Reformation claim, the Court does not reach the issue raised in the Trustee's cross-appeal.

## BACKGROUND

### I. Bankruptcy Proceedings[2]

On March 29, 2011, Debtors Michael Dylan Henshaw and Kimberly Henshaw filed their chapter 7 petition, and the Trustee was appointed to oversee the Debtors' estate. *See* Dkt. Nos. 1 and 3 in Bankr. No. 11-00853. The Trustee initiated two adversary proceedings concerning the real property jointly owned by the Debtors' estate and the Henshaws, commonly known as Units A and B of "The Power Farm" condominium project located at the street address now known as 76-875 and 76-875A, Hualalai Road, Kailua-Kona, Hawaii 96740, designated as TMK 3-7-6-007-019, C.P.R. Nos. 0001 and 0002 (the "Property"). The purchase price of the Property was $680,000.00. The Henshaws contributed $595,149.20 by refinancing their home in San Diego and $83,000.00 from retirement account funds, for a total of $678,149.20. In comparison, Debtors contributed $6,970.20 towards escrow costs. *See* Adv. Counterclaim ¶ 6, Dkt. No. 8-1 (Ex. 1).

The Henshaws now assert that, although title was taken as "joint tenants," the parties did not intend to indicate upon recordation that the Property was owned in equal shares.[3] The parties "mistakenly" believed that title taken as a joint tenancy

---

[2]Unless otherwise indicated, all references to the record correspond to this Court's docket number entries in Civil No. 17-00329 for the consolidated cross-appeals.

[3]The June 22, 2007 deed provides that Debtors and the Henshaws are "joint tenants," which under Hawaii law means that they have equal ownership of the Property. *See In re Henshaw*, 670 F.

would simplify their estate planning, "without changing the current ownership," which was intended to remain entirely with the Henshaws.   Adv. Counterclaim ¶ 7, Dkt. No. 8-1.   The Henshaws contend that the magnitude of this mistake did not become known until the Trustee filed the first adversary proceeding in 2011.

## A.    Avoidance Action (Adv. Pro. No. 11-90105)

On December 13, 2011, the Trustee filed an adversary complaint against the Henshaws in Adv. Pro. No. 11-90105 ("Avoidance Action"), asserting that Debtors had a 50% interest in the Property by operation of the June 22, 2007 deed ("2007 deed"), and had fraudulently transferred their 50% interest in the Property to the Henshaws by way of a Quitclaim deed dated December 30, 2009, recorded with the Bureau of Conveyances of the State of Hawaii ("Bureau") as Document No. A-46450946, on March 19, 2010 ("2010 Quitclaim deed").   *See* Dkt. No. 8-1 (Ex. 5).

The adversary complaint asserted that Debtors' transfer of their joint interest in the Property was fraudulent in violation of 11 U.S.C. §§ 544(b) and 548(a)(1), and

---

App'x 563, 564 (9th Cir. 2016) ("Under Hawaii law, 'a joint tenant has a specific, albeit undivided, interest in the property, and if he survives his cotenant he becomes the owner of a larger interest than he had prior to the death of the other joint tenant.'" (quoting *Sawada v. Endo*, 57 Haw. 608, 613, 561 P.2d 1291, 1295 (1977)); *De Mello v. De Mello*, 24 Haw. 675, 676 (1919) (stating that "possession of one joint tenant, or tenant in common, is the possession of all, and all are equally entitled to the use and enjoyment of the property")).   The Ninth Circuit affirmed the bankruptcy court's determination in a prior adversary proceeding that the meaning of "joint tenants" was unambiguous, and also affirmed the court's determination that Debtors had a 50% interest in the Property.   *See id.*

the Hawaii Uniform Fraudulent Transfer Act, Hawaii Revised Statutes ("HRS")

§ 651C-4(a).   On August 24, 2012, the bankruptcy court entered its "Order

Granting Plaintiff's Motion for Summary Judgment Filed May 22, 2012, and

Vesting Title to Real Property (TMK 3-7-6-007-019, C.P.R. Nos. 0001 and 0002) in

Debtors and Defendants as Joint Tenants" and "Judgment Vesting Title to Real

Property (TMK 3-7-6-007-019, C.P.R. Nos. 0001 and 0002) in Debtors and

Defendants as Joint Tenants; Exhibit 'A'" in Adv. Pro. No. 11-90105 ("Avoidance

Order and Judgment").   The Avoidance Order and Judgment voided the

pre-petition transfers of Debtors' one-half ownership interest in the Property to the

Henshaws as constructively fraudulent transfers, and vested title to the Property in

Debtors and the Henshaws as joint tenants, as described in the 2007 deed.   The

2010 Quitclaim deed was rendered "null and void, having no effect whatsoever on

the properties."   Avoidance Order at 4, Dkt. No. 26 in Adv. Pro. No. 11-90105.

The Henshaws appealed the Avoidance Order and Judgment to the district court.[4]

　　　In its order affirming the bankruptcy court, the district court applied the parol

evidence rule to the 2007 deed "to prevent admission of extrinsic evidence

_____

[4]Defendants filed an appeal of the Avoidance Order and Judgment to the district court, Civil No.
12-00513-JMS-BMK, on September 6, 2012 (Dkt. No. 30 in Adv. Pro. No. 11-90105), and filed a
motion to stay enforcement of the Avoidance Order and Judgment on October 1, 2012 (Dkt. No.
38 in Adv. Pro. No. 11-90105).   The bankruptcy court denied the motion to stay the Avoidance
Order and Judgment following an October 29, 2012 hearing on the motion.   Dkt. No. 49 in Adv.
Pro. No. 11-90105.

suggesting that the subject properties were held in anything other than a joint tenancy," reasoning that, "[a]pplication of this rule in this action makes common sense—third parties, including the Trustee, must be able to rely on the terms of a recorded deed." *In re Henshaw*, 485 B.R. 412, 421 (D. Haw. 2013), *aff'd*, 670 F. App'x 563 (9th Cir. 2016). The district court further explained that:

> if third parties such as creditors cannot rely on the face of a deed, then any assets held in joint tenancy will require investigation. It is for this very reason that "creditors are entitled to rely 'on the face of the deed,'" regardless of whatever the equitable interests may be between the joint tenants. *See In re Risler*, 443 B.R. 508, 510 (Bankr. W.D. Wis. 2010) (quoting *In re Teranis*, 128 F.3d at 472). Indeed, especially in the bankruptcy context, allowing extrinsic evidence would open the door to collusion given that joint tenants' interests will often be aligned to shield assets from the bankruptcy trustee and/or creditors. The parol evidence rule is designed to prevent this type of possible fraud—the "rule discourages interested witnesses to a contract from committing fraud, perjury, or unintentional invention by making statements that the contract did not actually represent the agreement of the parties."

*In re Henshaw*, 485 B.R. at 420 (footnote omitted). Although the Henshaws appealed the district court's order, the Ninth Circuit affirmed. *In re Henshaw*, 670 F. App'x 563, 564 (9th Cir. 2016).

### B.  Sale Action (Adv. Pro. No. 12-90070)

After the bankruptcy court entered the Avoidance Order and Judgment, the Trustee commenced Adversary Proceeding No. 12-90070 on September 13, 2012, under Section 363(b) and (h), seeking an order permitting the sale of both Debtors

and the Henshaws' 50% ownership interests in the Property.   Adv. Compl., Dkt.

No. 8-1 (Ex. 1).   The adversary complaint specifically noted that the Avoidance

Order and Judgment voided as fraudulent transfers the pre-petition transfers of

Debtors' ownership interest in the Property to the Henshaws via the 2010 Quitclaim

deed, and revested title to the Property in Debtors and the Henshaws, as joint tenants

each with a 50% ownership interest.   Adv. Compl. ¶¶ 8–12.

The Henshaws asserted a Counterclaim for reformation of the 2007 deed on

November 14, 2012, alleging for the first time that "[t]itle was taken, by Grant Deed,

as joint tenants solely for estate planning purposes so that Debtors would have a

right of survivorship[, however] [n]either [the Henshaws] nor Debtors believed that

joint tenancy was an irrefutable indication of equal ownership[.]"   Adv.

Counterclaim ¶ 7, Dkt. No. 8-1 (Ex. 2).   They contend that, although Debtors lived

in the Property while paying rent, the Henshaws at all times treated the Property as

their own, including taking all tax advantages, such as the mortgage interest

deduction and depreciation, while reporting the income and paying income tax on

the rent.   According to the Henshaws, their "plan was for the Debtors to eventually

purchase the [Property] from [them] by obtaining their own mortgage for the full

purchase price of $680,000 and purchasing the [Henshaws'] interest in the

Property."   Adv. Counterclaim ¶ 8.   Shortly after the July 2007 purchase, however,

"Debtors began to fall behind on their rent payments.   By August 2009, [the

Henshaws], not wanting to evict their son and his family, began looking to refinance the Property to take advantage of lower interest rates and to lower the monthly payment they were making." Adv. Counterclaim ¶ 9. Over the next several months, the Henshaws spoke with several lenders, at which point, they claim "it became [clear] that in order to refinance the Property it was necessary to abandon the estate planning joint tenancy and to convert the title to reflect [the Henshaws'] sole ownership." *Id.* Sometime in November 2009, the Henshaws asked that Debtors affect this change in record ownership so that they could refinance the Property. *Id.*

The Counterclaim asserts that the Henshaws are entitled to reformation of the 2007 deed because "the form of title fails to clearly reflect the true intent of the [Henshaws] and Debtors in that it arguably appears to vest the Debtors with a 50% interest in the Property," Adv. Counterclaim ¶ 16, and the 2007 deed's failure "to clearly reflect the true intent of the parties resulted from a mutual mistake by [the Henshaws] and Debtors, including but not limited to, that having record title vest to the parties as joint tenants would result in an equal ownership by Debtors and [the Henshaws]." *Id.* ¶ 17. The Henshaws again aver that the true intent of the parties when they purchased the Property in 2007, was as follows:

> On about July 3, 2007, [the Henshaws] and Debtors mutually agreed to co-own the Property. Actual ownership was agreed to be entirely with [the Henshaws] with Debtors to have record title and a right [of] survivorship for estate planning purposes. This agreement was later reduced to writing by the issuance of a Grant

> Deed.   Title was vested in [the Henshaws] and Debtors as joint tenants.

Adv. Counterclaim ¶ 15.   The Counterclaim attempts to reform the 2007 deed so that the parties' respective ownership interests are "equivalent to their respective contributions to the purchase price."   Adv. Counterclaim ¶ 16.

The Trustee moved for summary judgment on the Counterclaim as matter of law because (1) a deed cannot be reformed against a bankruptcy trustee who takes the position of a bona fide purchaser for value; and (2) the Counterclaim constitutes an impermissible collateral attack on the Avoidance Order and Judgment issued in Adv. Pro. No. 11-90105.   Adv. Mem. in Supp. of Mot. for Summ. J., Dkt. No. 8-1 (Ex. 4).   In opposition to the Trustee's motion for summary judgment, the Henshaws maintain that the Trustee was not a bona fide purchaser because he had constructive notice as of March 29, 2011, the date of the commencement of Debtors' chapter 7 case, via the 2010 Quitclaim deed, of a competing claim of ownership to the Property.   Adv. Mem. in Opp'n to Mot. for Summ. J., Dkt. No. 8-1 (Ex. 6).   In reply, the Trustee argues that the Henshaws cannot properly rely on the 2010 Quitclaim deed to provide notice of anything because it was "a fraud on creditors and the bankruptcy estate," and a null and void deed without legal effect.   Adv. Reply at 5, Dkt. No. 8-1 (Ex. 8).

## II.     Bankruptcy Court Order and Appeal

Following a May 5, 2017 hearing on the Trustee's motion, the bankruptcy court entered its Amended Memorandum of Decision on Motion for Summary Judgment on June 20, 2017 ("6/20/2017 Order"), granting summary judgment in favor of the Trustee on the Henshaws' Counterclaim.   Dkt. No. 8-1 (Ex. 10).   The bankruptcy court first determined, as a matter of state law, that the Trustee holds the Property free of reformation claims unless a hypothetical bona fide purchaser would have taken subject to those claims.   6/20/2017 Order at 6–7.   The court surveyed applicable state law, and noted the absence of binding authority on the specific issue in Hawaii:

> Although neither party has cited any Hawaii authority on point, I predict that the Hawaii Supreme Court would follow the common law rule that a contract may not be reformed if doing so would unfairly affect the rights of a bona fide purchaser for value.   [*See* Restatement (Second) of Contracts § 155; 66 Am. Jur. 2d Reformation of Instruments § 68.]   This is consistent with the general rule in Hawaii that a good faith purchaser of real property for value takes the property free of any claims of which the buyer has neither actual nor constructive notice.   [*Kau Agribusiness Co. v. Heirs of Ahulau*, 105 Haw. 182, 193 (2004).]

6/20/2017 Order at 6.   Neither party challenges this legal determination on appeal.

The bankruptcy court next examined whether a hypothetical bona fide purchaser "charged with notice of any document in the real estate recording system and any fact which such document would lead a reasonably prudent person to

inquire about and discover," *id.* at 7, would have constructive notice of the

Henshaws' reformation claim.   The bankruptcy court rejected the Trustee's

argument that the Henshaws should be precluded from asserting that the 2010

Quitclaim deed provided constructive notice—because it was a fraudulent

transfer—ruling instead that avoidance of the deed did not nullify any notice

imputed prior to entry of the Avoidance Order and Judgment.[5]

On the date of the commencement of Debtors' chapter 7 case, the bankruptcy

court determined that none of the real estate records would have put the Trustee on

constructive or inquiry notice of the Henshaws and Debtors' purported mistake

regarding the vesting of title under the 2007 deed, their respective ownership

interests, and Counterclaim for reformation.

> Neither [the 2007 deed nor the 2010 quitclaim deed] would have
> specifically alerted the buyer that the 2007 deed did not
> accurately reflect the Henshaws' alleged intentions.   The 2010

---

[5]In particular, the bankruptcy court summarized the arguments and determined as follows:

> The trustee argues that the 2010 quitclaim deed should not give notice of the
> mistake because this court has already decided that the deed represented a
> fraudulent transfer.   He argues that it would be anomalous and unjust to hold that a
> transferee of a fraudulent transfer gets any benefit from the very document that
> effected the fraudulent transfer.   I need not reach this argument because I hold that
> the 2010 quitclaim deed did not confer such notice.   Nevertheless, I do not accept
> the trustee's argument.   The 2010 quitclaim was a matter of record when the
> debtors commenced their bankruptcy case; a hypothetical bona fide purchaser of
> the property on that date would have seen it.   The subsequent avoidance of that
> deed does not negate any notice it imparted before it was avoided.

6/20/2017 Order at 8 n.25.

quitclaim deed would not have alerted the hypothetical buyer that the 2007 deed was wrong; the buyer could reasonably assume that the parties wished to change their ownership shares, rather than to correct them. The quitclaim deed would not have prompted a reasonably prudent buyer to inquire further into the debtors' ownership interest in the property.

6/20/2017 Order at 7. The bankruptcy court noted that when a deed contains a mistake, "the common practice in Hawaii is to record a correction deed. Such a deed makes it clear that the original deed contained an error." However, "the Henshaws and the debtors did not execute a correction deed." 6/20/2017 Order at 8 (footnote omitted). The court also reasoned that the Debtors' physical possession of the Property on the date of their bankruptcy petition "would not have alerted the hypothetical buyer that the 2007 deed contained an error." Indeed, "it probably would not have raised any question in the minds of a hypothetical buyer; it would not be the least bit surprising to find the debtors residing in a home owned by the debtor husband's parents." 6/20/2017 Order at 9. Based on the evidence in the record, the bankruptcy court concluded that "[b]ecause a hypothetical buyer would not have had sufficient notice of any mistake in the 2007 deed, the counterclaim [for reformation] is not viable, in light of § 544(a) of the Bankruptcy Code." 6/20/2017 Order at 9.

The Trustee also sought summary judgment on the ground that the Counterclaim was an improper collateral attack on the Avoidance Order and

Judgment. The bankruptcy court denied the Trustee's collateral attack claim, finding that the Trustee had not established that the Henshaws, by their Counterclaim, sought "to avoid, defeat, evade, or deny the force and effect of the prior final judgment, order, or decree in some manner other than a direct post-judgment motion, writ, or appeal." 6/20/2017 Order at 10 (quoting *Smallwood v. City and Cty. of Honolulu*, 118 Haw. 139, 146 (Haw. App. 2008)). Unlike the current matter, "[i]n all of the Hawaii cases applying the doctrine of collateral attack, the claim in the subsequent case would have nullified the judgment in the first case." 6/20/2017 Order at 11. The Henshaws' Counterclaim for reformation, if sustained, "would not 'nullify' the judgment avoiding the 2010 quitclaim deed," but "would only determine the extent of the debtor's interest in the property before the quitclaim deed was signed." 6/20/2017 Order at 13.

The bankruptcy court entered Final Judgment in favor of the Trustee on June 28, 2017. Dkt. No. 8-1 (Ex. 11). These cross-appeals and election to proceed in United States District Court ensued.[6]

## STANDARD OF REVIEW

This Court, in reviewing a bankruptcy court decision on appeal, applies a "clearly erroneous" standard to the bankruptcy court's findings of fact and reviews

---

[6]The bankruptcy court entered Final Judgment with the consent of the parties. *See* 6/20/17 Order at 5. This Court has jurisdiction pursuant to 28 U.S.C. § 158.

its conclusions of law *de novo*. *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 419 (9th Cir. 1993); *Briggs v. Kent (In re Professional Investment Properties of Am.)*, 955 F.2d 623, 626 (9th Cir. 1992), *cert. denied*, 506 U.S. 818 (1992). A reviewing court "must accept the Bankruptcy Court's findings of fact, unless the court is left with the definite and firm conviction that a mistake has been committed. Mixed questions of law and fact are reviewed *de novo*." *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) (quotation marks and citations omitted).

In applying Section 544(a)(3), "state law determines whether the trustee's [bona fide purchaser] status will defeat the rights of another claiming an interest in real property, and '[w]hether the circumstances are sufficient to require inquiry as to another's interest in property for the purposes of [state law] is a question of fact.'" *In re Cutter*, 2010 WL 6467694, at *7 (B.A.P. 9th Cir. Oct. 21, 2010) (quoting *Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 420–21 (9th Cir. 1993)), *aff'd*, 466 F. App'x 616, 617 (9th Cir. 2012) ("In *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791–92 (9th Cir. 1997) (en banc), we reiterated that the Bankruptcy Court's determination of historical facts are reviewed for clear error, but held that mixed questions concerning the selection of the applicable legal rules and the application of the facts to those rules are reviewed *de novo*."); *see also In re Professional Invest. Props. of Am.*, 955 F.2d 623, 626 (9th Cir. 1992) (bankruptcy court's conclusion

regarding the existence of inquiry or constructive notice reviewed under the clearly erroneous standard).

**DISCUSSION**

The Henshaws appeal the grant of summary judgment in favor of the Trustee on their Counterclaim for reformation.   Because the bankruptcy court did not clearly err by finding that a hypothetical bona fide purchaser would not be on constructive or inquiry notice that the 2007 deed did not reflect the Henshaws and Debtors' intended ownership interests, the bankruptcy court's decision is affirmed.

## I.    The Trustee's Rights as a Bona Fide Purchaser

"Section 363 governs the rights of parties in liquidating the bankruptcy estate's fractional interest in property owned jointly by the bankruptcy estate and the nonbankrupt co-owners.   Subsection (h) permits the trustee . . . to effect a forced sale of property in which the debtor and the other co-owners have an undivided interest."   *In re Spickelmire*, 433 B.R. 792, 798 (Bankr. D. Idaho 2010) (quoting *Marino v. Xuereb (In re Marino)*, 794 F.2d 1367, 1369 (9th Cir. 1986)).[7]   Section

---

[7]Section 363(h) provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--
>> (1)    partition in kind of such property among the estate and such co-owners is impracticable;

544(a), "the strong arm clause," gives a bankruptcy trustee the status of a bona fide

purchaser of real property as of the petition date, with the corresponding power to

avoid certain transfers or liens against property of the bankruptcy estate.

Specifically, Section 544(a)(3) allows the trustee to avoid all obligations and

transfers that would be avoidable by:

> a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).   Section 544(a) grants the bankruptcy trustee this power

"without regard to any knowledge of the trustee or of any creditor."   A trustee as a

hypothetical bona fide purchaser of real property is defined as:

> A person who (1) at the instant the petition is filed, purchases from the debtor; (2) for value; (3) in good faith; (4) without actual knowledge of any defect or limitation in title; (5) every interest in real property the debtor could have purported to convey without the terms of the conveyancing instrument itself evidencing irregularity; (6) by an instrument that adheres to all formal requisites usually and regularly followed in the relevant jurisdiction (e.g. that the conveyance is in writing and acknowledged); and (7) who as of the moment of purchase,

---

> (2)   sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3)   the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4)   such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

takes all unilateral steps under relevant nonbankruptcy law to perfect the conveyance (e.g. recording).

*In re Christie-Pequignot*, 2003 WL 22945921, at *3 (Bankr. D. Haw. Oct. 24, 2003)

(quoting *Saghi v. Walsh (In re Gurs)*, 27 B.R. 163, 165 (B.A.P. 9th Cir. 1983)); s*ee*

*also In re Cutter*, 2010 WL 6467694, at *14 (B.A.P. 9th Cir. Oct. 21, 2010) ("A

trustee is deemed to have conducted a title search, paid value for the real property,

and perfected its interest as a legal title holder as of the date of commencement of the

bankruptcy.") (citing *In re Bridge*, 18 F.3d 1152 (3d Cir. 1994); 5 *Collier on

Bankruptcy* ¶ 544.05 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010)),

*aff'd*, 466 F. App'x 616 (9th Cir. 2012).

Put another way—

> the trustee's status as a hypothetical bona fide purchaser is "without regard to" any actual knowledge of the trustee or of any creditor. 11 U.S.C. § 544(a)(3). On the other hand, the trustee only obtains those rights that a hypothetical purchaser without actual knowledge could have obtained under applicable law at the time the bankruptcy is commenced. *Professional Investment*, 955 F.2d at 627 (following *McCannon v. Marston*, 679 F.2d 13, 17 (3d Cir. 1982)); *In re Weisman*, 5 F.3d 417, 420–21 (9th Cir. 1993). Thus "[a] trustee does not become a hypothetical bona fide purchaser if she [or he] has been put on constructive or inquiry notice." *Professional Investment*, 955 F.2d at 627. *See also* 5 A. Resnick & H. Sommer, Collier on Bankruptcy ¶¶ 544.03, 544.08, pp. 544–9 *et seq.* ("Collier") (trustee deemed to have conducted title search and is subject to constructive or inquiry notice).

*In re Deuel*, 361 B.R. 509, 514 (B.A.P. 9th Cir. 2006), *aff'd*, 594 F.3d 1073 (9th Cir. 2010).

The extent of the Trustee's rights as a bona fide purchaser of real property is measured by the substantive law of the jurisdiction governing the property in question. *In re Wiseman*, 5 F.3d 417, 419 (9th Cir. 1993); *see also In re Deuel*, 361 B.R. 509, 514–15 (bankruptcy trustee's rights as a hypothetical bona fide purchaser are limited by any constructive notice that such a purchaser would have under applicable state law).

Under Hawaii law, "[c]onstructive notice arises as a legal inference, where 'circumstances are such that a reasonably prudent person should make inquiries, [and therefore] the law charges a person with notice of facts which inquiry would have disclosed.'" *SGM P'ship v. Nelson*, 5 Haw. App. 526, 529, 705 P.2d 49, 52 (1985) (quoting *Germany v. Murdock*, 99 N.M. 679, 681, 662 P.2d 1346, 1348 (1983)) (some citations omitted) (bracketed material in *SGM*). The Court therefore examines whether the Trustee had constructive or inquiry notice of the issues raised in the Henshaws' Counterclaim for reformation based upon the publicly recorded documents in the real estate recording system and any fact which such documents would have led a reasonably prudent person to inquire about and discover, *see id.*, in order to determine the Trustee's rights as a hypothetical bona fide purchaser when Debtors' bankruptcy commenced on March 29, 2011.

## II.  The Trustee, as a Bona Fide Purchaser, Is Entitled to Summary Judgment on the Henshaw's Counterclaim for Reformation

At the time Debtors filed for bankruptcy, the 2007 deed and the 2010 Quitclaim deed were recorded at the Bureau, and Debtors lived as tenants of the Property.  The Henshaws contend that the Trustee had constructive notice of their Counterclaim for reformation based upon the evidence of a "competing claim to the ownership of the Property" demonstrated by the 2010 Quitclaim deed and Debtors' possession of the Property at the commencement of the chapter 7 case.  Henshaws' Opening Br. at 7, Dkt. No. 8.  The Court disagrees.  No constructive or inquiry notice "arises as a legal inference," based upon any information contained in the 2007 deed or 2010 Quitclaim deed, or due to Debtors' possession of the Property, nor does "the law charge[] [the Trustee] with notice of facts which inquiry would have disclosed," under these circumstances.  *SGM P'ship*, 5 Haw. App. at, 529, 705 P.2d at 52 (citation and quotation marks omitted).

The Property's chain of title and the documents in the real estate recording system—the 2007 deed and the 2010 Quitclaim deed—contain no information that would lead a reasonably prudent person to inquire about or discover any "competing claim to the ownership of the Property."  The 2007 deed states only that the Henshaws and Debtors took title as "joint tenants," despite their professed intention in 2012 that the Henshaws should own the Property entirely.  That is, nothing about

the 2007 deed indicates that although the Henshaws "and Debtors mutually agreed to co-own the Property[,] [a]ctual ownership was agreed to be entirely with [the Henshaws] with Debtors to have record title and a right [of] survivorship for estate planning purposes." Adv. Counterclaim ¶ 15. The Henshaws assert that the "form of title fails to clearly reflect the true intent of [the Henshaws] and Debtors," Adv. Counterclaim ¶ 16, and the "failure of the [2007 deed] to clearly reflect the true intent of the parties resulted from a mutual mistake[.]" Adv. Counterclaim ¶ 17. That may be. The 2007 deed, however, affords no notice of this alleged mistake. Nor does the 2010 Quitclaim deed, which merely transferred "all right, title and interest" to the Henshaws for the consideration of $10.00, with no further explanation. Dkt. No. 8-1 (Ex. 5). That recordation in no way reveals that the Henshaws or Debtors believed that the prior joint tenancy reflected a "mistake" regarding their respective ownership interests. Nor does the 2010 Quitclaim deed indicate a purpose to correct a mutual mistake of ownership.

Indeed, the evidence is to the contrary—the parties did not become aware of the mutual mistake until the Trustee initiated the Avoidance Action in 2011, well after the 2010 Quitclaim deed was signed in December 2009 and recorded in March 2010. *See* Henshaw Reply at 5–6, Dkt. No. 10 (representing that the Avoidance Order and Judgment is "necessary to the Counterclaim as it informs and solidifies the existence of the mistake which occurred in the drafting of the [2007] Deed").

The Trustee cannot *reasonably* have been on notice of the reformation claim upon the commencement of the chapter 7 case where the Henshaws admit that even they did not know of their mistake until months or years afterward.

Stated differently, the 2010 Quitclaim deed only gave notice of the Henshaws' claim to ownership under the 2010 Quitclaim deed—it did not give notice of the Henshaws' Counterclaim for reformation of the 2007 deed based upon their mistake. It is devoid of any information whatsoever to put the Trustee, or a hypothetical bona fide purchaser, on notice that the Henshaws claimed to have been the sole owners of the Property from the date of purchase, June 22, 2007. The Court finds no error in the bankruptcy court's conclusion that "the 2010 quitclaim deed would not have alerted a hypothetical buyer that the 2007 deed was wrong; the buyer could reasonably assume that the parties wished to change their ownership shares, rather than to correct them." 6/20/17 Order at 7. *See also In re Cutter*, 2010 WL 6467694, at *15 ("[C]onsidering the history of title to the property, and record title in 'Edward W. Cutter, a Single Man,' no third party purchaser would be able to discern the fact or be on constructive or inquiry notice that title was not held by Cutter himself. Because this inquiry involves a question of fact, the bankruptcy court's choice among competing credible facts cannot be clear error.") (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)), *aff'd*, 466 F. App'x 616 (9th Cir. 2012).

Moreover, the bankruptcy court properly rejected the Henshaws' assertion that Debtors' possession of the Property on March 29, 2011 was sufficient to provide constructive notice of the Henshaws' present reformation claim. There is no dispute that, under Hawaii law, a purchaser takes title subject to the claims of parties in possession at the time of sale. *See Achi v. Kauwa*, 5 Haw. 298, 299 (1885) (explaining in an adverse possession case, that "good faith requires a purchaser of land to take his title subject to the claims of parties in possession when he buys . . . if the party in open possession is unable to show actual notice of his unregistered deed to a subsequent purchaser, his possession is constructive notice to such purchaser of all his rights, and he cannot be disturbed therein"); *see also Calhau v. Sociedade De Santo Antonio Beneficente De Hawaii*, 26 Haw. 342, 349 (1922) (noting that "at the time of the levy of the attachment and prior thereto the defendants were in possession of the lot in question, which possession was under the rule prevailing in this jurisdiction notice of all the rights of the parties in possession") (citing *Yee Hop v. Young Sak Cho*, 25 Haw. 494; *Achi v. Kauwa*, 5 Haw. 298).

In this case, however, possession of the Property by Debtors on March 29, 2011 would not put a hypothetical bona fide purchaser on notice of matters salient to the Henshaws' Counterclaim for reformation of the 2007 deed. Although Debtors' possession of the Property at the commencement of the chapter 7 case was, at most, theoretically inconsistent with the record title under the 2010 Quitclaim deed, such

possession would not reasonably have put a purchaser on notice of a mistake in the 2007 deed with respect to the Henshaws' ownership interest in this instance. Notably, Debtors were tenants of the record-title holders, and Debtor Michael Henshaw is the son of Appellants, neither of which raises a serious question about "record title" to the Property as of the date the Debtors filed their petition. Thus, no duty to inquire arose under these particular circumstances. The bona fide purchaser cannot be charged with knowledge of the possessor's mistaken belief regarding his or her own prior ownership interest under a joint tenancy. Even if Debtors' "possession, use or occupancy" of the Property triggered a duty of inquiry as to the Debtors' rights, their possession, use and occupancy is not inconsistent with the record title nor upon consideration of the totality of the circumstances.[8] When Debtors filed their petition, they were tenants-in-possession of the Property, under a rental agreement with the Henshaws, the Property's owner by operation of the 2010 Quitclaim deed. More to the point, the Henshaws cite no authority tailored to the current situation, in which their theory of notice would impose a duty to inquire

---

[8]*See In re Weisman*, 5 F.3d 417, 422 (9th Cir. 1993) ("Inquiry becomes a duty for a prospective purchaser of property when the visible state of affairs is inconsistent with the alleged rights of the person who has proposed to sell the property in question. California courts have not only looked to whether possession was technically inconsistent with title, but have also made a common-sense examination of whether the facts and circumstances of a particular case created a sufficient probability of inconsistency to create a duty to inquire.") (citations omitted); *In re Kasparek*, 426 B.R. 332, 347 (B.A.P. 10th Cir. 2010) ("implied notice based on the occupation of property by someone other than a record title holder is limited to notice of the *possessor's* potential claim to the property, whatever that may be, and once it is learned that the possessor does not claim a right adverse to the record title holders, no further inquiry is required").

whether (1) the possessor and owner previously owned that property, (2) mistakenly as joint tenants under a prior deed, (3) before the possessor quitclaimed any right, title, or interest to the current owner, (4) with no knowledge of the prior mistake regarding their respective ownership interests.   Such a duty would be patently unreasonable.   *See Yee Hop v. Young Sak Cho*, 25 Haw. 494, 506 (1920) (holding under Hawaii law that "petitioners being in open possession the law imposes upon respondents the duty to make *reasonable* inquiry as to the rights of the persons in possession") (emphasis added).

In this case, even considering all of the evidence presented by the Henshaws that bears upon possession of the Property, the facts would not lead a reasonable and prudent person to inquire into whether any other party claims any unrecorded interest in the Property or whether any mistake of law or fact existed as to the earlier recordation.   Even if a hypothetical bona fide purchaser had, in fact, made such inquiries with the Debtors-in-possession, no actual or constructive notice of the Henshaws' Counterclaim for reformation would have arisen on the date of commencement of the bankruptcy case because neither Debtors nor the Henshaws knew of the alleged mistake at that time.   For these reasons, no constructive or

inquiry notice can be imputed to the Trustee, and it was not error to grant his motion

for summary judgment on the Counterclaim for reformation.[9]

## <u>CONCLUSION</u>

For the foregoing reasons, the Court affirms the bankruptcy court's June 20,

2017 Order and Final Judgment entered on June 28, 2017.   The Clerk of Court is

directed to close these cases.

IT IS SO ORDERED.

DATED: February 8, 2018 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

---

*In re Henshaw*; CV NO. 17-00329 DKW-RLP; CV NO. 17-00341 DKW-RLP; **ORDER
AFFIRMING BANKRUPTCY COURT'S JUNE 2017 ORDER GRANTING TRUSTEE'S
MOTION FOR SUMMARY JUDGMENT**

---

[9]The Trustee cross-appeals the denial of his alternative ground for summary judgment—that the
Henshaws' Counterclaim was a collateral attack on the Avoidance Order and Judgment—and
urges the Court to hold that collateral attack is a proper basis for summary judgment as well.
Because the Court affirms the bankruptcy court's determination that the Trustee's bona fide
purchaser status cuts off the Henshaw's Counterclaim for reformation, the Court does not reach the
issues raised by the Trustee's cross-appeal.